Second case, Thompson v. Cope, Mr. Zimmerle. Opposing counsel, Chief Judge, may it please the Court. My name is Phil Zimmerle and I represent the appellants, Paramedic Lance Cope and the Health and Hospital Corporation of Marion County. The matter before this Court involves two interlocutory appeals from the same case. Both appeals focus on the actions taken by Paramedic Lance Cope in providing a sedative to Dusty Heisman after being asked by police to check on Mr. Heisman after Mr. Heisman had been involved in an altercation with the police. Mr. Cope assessed Mr. Heisman's condition, determined that he was in a state of excited delirium, a medical emergency, and administered a sedative so that he could safely transport Mr. Heisman to the hospital for treatment. Now, was there any question about where he was going? This man is, they say he was naked. I assume he had no clothes on. Is that correct? That's correct. He was naked and there was no dispute that he was being taken to the hospital. The first appeal before the Court is based on qualified immunity. The District Court denied the medical defendant's motion for summary judgment by concluding that the administration of the sedative by Medic Cope could amount to excessive force. At the same time, however, the District Court granted summary judgment in favor of Paramedic Cope on a claim of deliberate indifference or objective unreasonableness. The second appeal pertains to subject matter jurisdiction under the Indiana Medical Malpractice Act. The District Court denied a motion for reconsideration of a Rule 12b motion to dismiss, finding that the state law claims against Medic Cope are not medical malpractice claims. Those decisions of the District Court should be reversed for two reasons. First, Medic Cope provided the sedative in his role as a medical provider to respond to a medical emergency, which means both that his conduct did not amount to a Fourth Amendment seizure and that it is subject to the Indiana Medical Malpractice Act. Second, the alleged constitutional violation is not clearly established. Put simply, it is not clearly established that a paramedic providing a sedative to someone experiencing a medical emergency amounts to excessive force. Counsel, can I ask you to step back for a moment? Tell us about what else is going on in the District Court. There are claims against other defendants, correct? There were other claims. So the other defendants in the case involved the police officers that were there on the scene and the City of Indianapolis that employed them, et cetera. All of the claims against the police officers have been dismissed, with the exception of a failure to intervene claim with regard to Medic Cope's administration of the sedative. So there were various state law claims asserted against those police officers as well for battery, negligence, but those also were dismissed. So the only remaining claim to be tried are the claims against the paramedic and those claims that then go against the police officers that are for failing to intervene in terms of his administration of the sedative. Okay. At the risk of getting a little metaphysical, I understand that the state courts in Indiana treat coverage of the Medical Malpractice Act as a matter of jurisdiction. We generally don't. But would it be correct that you think the appropriate step for us to take would be to dismiss such a claim without prejudice to allow the plaintiff to pursue the medical malpractice panel process? That is exactly right, Your Honor. Okay. That is the appropriate result in this case, and that's the result ultimately that we've asked the court to take before the district court. Here the evidence is undisputed that Medic Cope provided the sedative as a paramedic to respond to a medical emergency. Now in our brief, we've identified a Sixth Circuit case, Pete v. Metro Government of Nashville-Davidson County, in which the court drew a distinction in terms of what amounted to a Fourth Amendment seizure and what did not. In that case, a grandmother called paramedics to respond for her grandson who was experiencing a seizure, and the paramedics used restraints to try to help him, and ultimately that resulted in his death. And in analyzing that, the court found that it did not amount to a search or a seizure. Those uses of those restraints, because they weren't intended to enforce the law, to punish, to deter, or incarcerate. Instead, they were aimed at rendering solicited aid, and that's the same result in this case that should have been applied by the district court. The evidence is undisputed that Medic Cope responded in his capacity as a paramedic. Now the position advocated by the plaintiff and ultimately adopted by the district court is that a fact finder could reasonably infer that Medic Cope was acting as a member of law enforcement. In fact, that's what the plaintiff argued. They said that he was effectively serving as a police officer, but that is not a reasonable inference. The fact finder could only arrive at the conclusion by ignoring the following critical facts. First, that Mr. Heisman was experiencing a medical emergency. That fact is undisputed. Medic Cope testified to that. The coroner, forensic pathologist, Dr. Sozio, testified to that. And the plaintiff's own law enforcement expert, Dennis Waller, stated that he was in a state of excited delirium. It's also notable that Mr. Waller, the law enforcement expert, didn't opine as to Medic Cope's role in this case. He opined as to the police officers, the law enforcement people. He didn't opine with regard to Medic Cope. That fact is critical in understanding Medic Cope's role in responding to Mr. Heisman. But the plaintiff omits that fact from its background facts in its brief before this court, and the district court ultimately disregarded that fact. If you look back in terms of the judge's analysis of the excessive force claim, it adopted by reference its analysis from the motion for reconsideration, and the motion for reconsideration, that was in part, she said, regardless of the fact that he was experiencing a medical emergency. But that should have been central to understanding what Medic Cope's response was. The second important fact that's undisputed is that Medic Cope performed an assessment. He checked if there was a head injury. He tried to communicate to Mr. Heisman, who simply grunted rather than responding. He checked Mr. Heisman's ABCs, his airway, his breathing, his circulation. He determined that his pulse was tachycardic, meaning that it was at a heightened level at 120, where normal would have been 50 to 100. And then he decided in his medical judgment that Mr. Heisman needed to be sedated to prevent cardiac arrest and allow him to provide safe transport to the hospital. Yet again, those are undisputed facts that are missing from the plaintiff's brief and missing from the district court's analysis of the excessive force claim. The third important fact that's undisputed in terms of the evidence is that Medic Cope decided independently to administer the sedative. He made that decision himself. The officers agreed to that. Medic Cope testified to that. Now, the plaintiff is likely to argue that Officer Spiegel testified that the officers ordered him to do that. But if you look closely at Officer Spiegel's testimony, which is on docket 97-8 and page 24 and 25 of his testimony, he says, I think it was the medic, it might have been the officers, I don't know. Well, that sort of speculation conjecture does not create a genuine issue of material fact. And finally... Counsel, our jurisdiction on this is pretty limited. And those kinds of issues parsing the district court's reading of the evidence are probably beyond our jurisdiction here. We really need to focus on the legal standard for qualified immunity. Well, Your Honor, qualified immunity, I agree that we are not arguing about facts in terms of what the evidence will show. These are undisputed facts with regard to what the evidence shows in terms of him experiencing a medical emergency, with the fact that there was an assessment performed, that he was being taken to the hospital, as Judge Mannion asked. Looking at those facts and then applying the Qualified Immunity Analysis and applying the Indiana Medical Malpractice Act, we look at was...qualified immunity is intended to protect those except the plainly incompetent or those who knowingly violate the law. And if you look at it in that context, in terms of the role that he was performing, he was not acting in a way that was plainly incompetent or a way that he was knowingly violating the law. I want to draw the Court's attention to the district court's analysis with regard to the objective and reasonableness deliberate indifference claim. On page 18 of the appendix, and this is from the summary judgment decision, with regard to that portion of the Court's analysis, where the Court wrote that Medicope's medical decision to administer the Versed was reasonable based on the circumstances before him where Heisman was in a state of excited delirium and had been combative. Once the Versed was administered, Medicope monitored Heisman and provided additional necessary medical treatment as the situation unfolded. Based on the designated evidence, Medicope's medical care was objectively reasonable under the circumstances. And so in terms of kind of... there's a logical inconsistency between the Court's analysis, where on the one hand the Court says that what he did was reasonable, and on the other side it says that it was unreasonable. And the Constitution cannot place a paramedic in a damned-if-you-do, damned-if-you-don't situation. And so in terms of the Fourth Amendment question, whether or not this amounted to a Fourth Amendment search or seizure, looking back to the Peete decision, it's important to see that rendering solicited aid is not a violation of the Fourth Amendment. So what that means with regard to the first step of the Qualified Immunity Analysis is that there was no constitutional violation because rendering aid is not a search or a seizure. At the same time, those actions are subject to the requirements of the Indiana Medical Malpractice Act because the Indiana Court of Appeals has said that whether a claim sounds a medical malpractice is whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services. That's from Anonymous Hospital v. Doe. Your Honors, the state law claims against Medicope are based on his behavior while he was acting in his professional capacity as a paramedic. The District Court did not apply that standard in ruling on the motion for reconsideration. In fact, it never even mentioned that standard. The second point that I'd like to make to the Court pertains to the second prong of the Pearson v. Callahan analysis, and that is that the constitutional right alleged here is not clearly established. Existing precedent must have placed the statutory or constitutional question beyond debate. It's not supposed to be at a high level of generality. Instead, it must be analyzed in light of the specific context of the case. So the facts matter. Neither the plaintiff nor the District Court identified any case law to meet that standard. Instead, the cases that they've cited are police officer cases. Graham v. Connor, a case where a suspect was forcibly handcuffed and thrown against the hood of a car. Tennessee v. Garner, a seminal case from the Supreme Court where a police officer was shooting at a fleeing suspect. And Seventh Circuit cases they've cited, Abdullahi and the Payne v. Pauli decision, those are cases, again, where police officers are using actual physical force. They're not paramedic cases where paramedics are asked to check on someone, as in this case, who perform an assessment, who are responding to a medical emergency, and ultimately trying to take the person to the hospital. Now, the reason we have qualified immunity is to allow people to make quick judgments and reasonable judgments, and perhaps they may be mistaken because these people are, like Mr. Cope in this situation, encountering a situation that is tense, where they're asked to make split-second decisions, and we want to encourage them to do the right thing and to act and not be afraid that what they're doing is a constitutional violation. And in this instance, there's no case law that would have put Medic Cope on notice that what he was doing was a violation of the law. In fact, all the case law that we've identified to the court indicates that what he was doing was in accordance with the law, and that what the police officers were doing was also in accordance with the law, because when they see a medical... they see the sort of situation where this person needs treatment, their job is to call for a medical officer to come on the site, and that's ultimately what paramedic... paramedic Cope... that was his role in this case. So, Your Honors, we respectfully request that this court reverse the ruling of the trial court denying qualified immunity against the excessive force claim and reverse the trial court's finding that the state law claims were not subject to the Indiana Medical Malpractice Act. Thank you. Thank you, Mr. Semler. Mr. Barnhart. Okay. Thank you. May it please the court, counsel, by Indiana statute, Lance Cope had the authority to enforce Indiana laws, administrative rules, ordinances, and the Code of Health and Hospital Corporation for the county. I made reference to that statute at a couple points in the briefing, and I'd like to step back a little bit, because I think the hospital and Medic Cope are jumping in at the wrong point of the case in terms of the factual dispute. And this is pre-trial. The question that we're presented here today is whether we have the opportunity to present this case to a jury. From the standpoint of what's going on here, you have a circumstance where the police responded to the scene, and he was naked, he appeared to be on narcotics, according to the police officers, and he was handcuffed. And at one point, after he was handcuffed, he was resisting. There comes a point, and he was resisting with some amount of force. There comes a point where he stops resisting, and he becomes effectively still, noncompliant, noncooperative, or cooperative, but not necessarily responding directly to the officers. He's in a state of intoxication. At that point, in Indianapolis, the way that the law enforcement is made up, the Indianapolis Metropolitan Police Department are responsible for the streets, and the Marion County Sheriff's Department is responsible for transporting individuals that are incarcerated, that are in custody, if you will. Wagon responded to the scene, and the deputy, once the wagon responds, the way that it sort of happens, the custody is transported from IMPD, who's the arresting officer, to the Marion County Sheriff. The Marion County Sheriff's deputy, in this case, brought a set of leg shackles, and he was leg shackled. He was then taken from the position where he was, to about 15 to 20 feet away, and going to be transported in the wagon. That's how they normally take the individuals. With all due respect to my friend here, there is a dispute as to whether he was going to be taken to the jail, as opposed to the hospital. And the defendants rely on the fact that he was going to be taken to the hospital, but he was going to be taken to the controlled facility in the hospital. The hospital, this is a public hospital. They have a jail facility, control facility. The question is not whether he was taken for, there was a presumption there, a false presumption, that he was going to be taken to the hospital for medical needs. He was not. You're not suggesting he was going to be taken downtown to the Marion County Jail, though, was he? Yes, that was the initial determination. I thought you were just telling us he was going to be taken to the hospital's secure facility. No. He was initially going to be taken to the jail. And he was going to be taken to the jail up until the time that he stepped on the foot of the wagon and pushed back. When he pushed back, he knocked the officers off their balance. He's going to a jail. Yes, correct. He's totally nude and obviously messed up. Yes. What is he going to do when he goes to jail? He's going to go to the jail. They're going to provide him clothing. They do an assessment at the jail from a nursing assessment in an intake process. I don't think it's unusual to take nude individuals to the jail. I think it happens on a regular basis. But he absolutely was going to be taken to the jail. It was a determination that was made. It was not until the point at which he steps back and knocks the officers off their balance that the Deputy Johnson says, we can't take him in the wagon, it's not safe. He might be rolling around. He might be doing other things. We have to take him on the cot. It wasn't because of a medical need. It was because they were making a determination for transportation. So from that standpoint, they get on the radio and say, hey, we need an EMT. We need an EMT to transport him because we made a determination that he cannot be transported safely in the wagon. Mr. Bernhardt? Yes, Judge. Let me ask you, as I understand the evidence here, Mr. Cope concluded that Mr. Heisman was in an excited delirium. Is that the correct term? Yes. And his testimony was that that is a medical emergency that could result in cardiac arrest. Is that right? I think there is some evidence supporting that. Is there contrary evidence? I believe the context in terms of the situation that he was in. From the standpoint of is there contrary medical evidence? I can easily imagine this case from completely the opposite direction if Medic Cope had assessed him as being in an excited delirium and done nothing. And he then experiences cardiac arrest. We then have a deliberate indifference claim, right? Yes. So what evidence is there to raise a genuine issue of material fact as to whether Heisman was in an excited delirium calling for emergency medical treatment? Well, the evidence goes to the conclusion that he was in a state of excited delirium was based on the determination by the pathologist after the fact. And so when you're looking at the evidence that you're drilling down on, the defendants point to, well, he was in an excited delirium. That's not a disputed fact. It is a disputed fact whether the perception of Medic Cope, whether he believed he was in a state of excited delirium. What did Cope testify? What's that? What did Cope testify about? Well, Cope testified that he did make an assessment. The evidence that indicates that he was not responding as if he was in a state of excited delirium were the officers that observed Medic Cope and the officers that indicated that, well, this was just a ho-hum situation where they were trying to get him, as a matter of convenience, get him to the control facility. Let me, if I could, take you to what I view as the core of the qualified immunity problem. In the district judge's opinion and in your brief, I don't see any relevant case law that would suggest that an emergency medical technician is seizing a patient for Fourth Amendment purposes by administering a sedative under circumstances like this. The Supreme Court has often been summarily reversing Circuit Court of Appeals decisions, denying or affirming the denial of qualified immunity without quite careful attention to applicable case law in specific circumstances comparable to the case. What's the best you've got? Judge, I have three responses to that. First and foremost is under the, and I'm going to start out with the statutory authority of the individuals that are employed by Health and Hospital. And again, going to, and I started without that citation for a reason, to enforce Indiana laws, administrative rules, ordinances, and the code of Health and Hospital. What Cope was doing when he was interacting. You're saying he had police power? Effective, yes. And what's the statutory authority for him to have police power? The statutory authority derives under the statutory authority that was given to Health and Hospital, and that is 34-18-222. We cited it. Bear with me, Judge, as I find it. And 16-22-834. The language of the statute essentially says that they can enforce Indiana laws. Certain laws having to do with Health and Hospital matters, right? That's the core, and I think that's what the district court got it right, is this is the intersection between EMTs, and I take from your questions that the concern is that this could be an overarching put EMTs and first responders on unlimited liability. That is not the plaintiff's position. The plaintiff's position is that when Minnick Cope took on the role of law enforcement, when he was interacting, when he was acting as a police officer, by engaging in... I understand the argument. This is qualified immunity. You've referred to the statute. What are the other two answers? The answer is certainly there's case law indicating that you cannot... And to that point, Judge, I think that Minnick Cope's use of the phrase chemical restraint in his report, his own words, indicates that this was on a forced continuum. And when you look at a forced continuum, you look at, okay, a heightened level of verbal interaction, physical interaction, all the stuff that police officers look at. And so from that standpoint, the case law is clear in the circuit that you cannot use excessive force to an individual that is not currently resisting. He had been resisting. He was not resisting at the time that the chemical restraint was administered, and I think that's very clear from multiple witnesses. The second issue is in terms of this. A similar issue was handled in the Third Circuit, the Rivas case. In the Rivas case... Sorry, where is this? The Rivas case, 365 F3D 151, 2004 case out of Pennsylvania, in the city of Passaic. I hope I'm pronouncing that correctly. The Rivas case is important because it references two cases from the Seventh Circuit, essentially the abandonment doctrine from this circuit. And the Rivas case uses the two Seventh Circuit cases to support the notion that, in that case, they were not going to apply qualified immunity to a first responder, to a medic, to an EMT. And that's important because that circumstance, the facts in that case are applicable here. And in those, what you have is effectively an abandonment of Mr. Heitsch. The fact that he was in a state of excited delirium, and the fact that the pathologist determined that he was in a state of excited delirium, does not mean that Medi-Cope was responding to him as if he was in a state of excited delirium. He was not providing medical care. There was facts and reasonable inferences indicating that he wasn't. He was trying to facilitate his transportation to a control facility, that control facility either being the Marion County Jail or the control facility in the Eskenazi Hospital. He wasn't responding. He just shot him with a sedative conveniently for the officers, who were tired of dealing with him. What appears to me, though, when the sheriff or whoever said, We can't get him in here. He's messing around too much. We need, if you talk about a cot, that's when they called and said, We need an EMT. Yes. So it's under that circumstance that then Cope comes along conveniently, and he intervenes, but that's after they can't get him in the truck. So now, well, doesn't that change the complexion of it? Now he is operating as a person that's going to do something other than put him in the truck and go to jail. I don't believe so. I don't believe so. Well, that's what I see. That's the core of this issue, is that the facts pertinent to that particular point goes with, Okay, now he needs medical care. The answer to that question is, Get him on the cot. Now, when Medi-Cope comes along, he interacts with law enforcement. Well, they want to get him on a cot before Cope comes along, and he happens to come along nearby, and so that's a new circumstance. I suppose. I believe that's a continuation of the old circumstance. Okay. Well, we've evolved into a different direction, at least that's what it seems to me. A different direction in the sense of a different means. Where you're going. Yeah, a means or method of transportation in the location. And Deputy Johnson made it clear. Means or method and destination. Destination in the sense of, was he going to the control facility at the hospital or was he going to the jail? Okay, let's assume the hospital. Yeah, and with the cot involved, I think that's a fair assumption. Now, that said, you have to look at what did Medi-Cope do in terms of interacting when that fact occurred, when that determination was made. He was talking to law enforcement. He was interacting with them. He was asking them questions. There was evidence that indicates that it was law enforcement that made the determination of the chemical restraint. Well, he's the only medical person around. Correct, yes. He's the only medical person around. Are you saying, Mr. Barnett, they directed him to apply the medication? Yes, I think there's evidence indicating that they did. What evidence is that that they told him to do that? One of the deputies. Is it your position also that any medical aid would be an aid of law enforcement's object of bringing him into custody? I'm sorry, I didn't hear that question. Would it be your position that any medical aid that either COPE or, well, that COPE applied would be under the umbrella that he's assisting law enforcement as opposed to just trying to treat someone? Yeah, no, that would not be my position. My position is that in this case, the aid that he rendered was. Yeah, so if it's this case, so I want to know whether COPE's independent medical judgment was overridden or directed in some fashion. I think it was overridden and directed by law enforcement, directing him essentially to provide him with a chemical constraint to make it convenient to facilitate his arrest. So we'll find that in the record. Yes, I believe, yes. Do we have a specific officer who said that to him? Yes, and I see my time is up, but if I may. Of course. Okay. It was Officer Spiegel, docket entry 116.13, deposition citation 25, 7-10. I believe it was the medics, or I don't recall, it was the medics that suggested that, or Officer Burnett, or Deputy Johnson said, we need to give him something to calm him down. That was Officer Spiegel that said that with respect to. Well, that's his assessment, but I'm speaking about, they may think that he needed to be sedated, but is there some suggestion that the independence of the judgment to be exercised by COPE didn't occur? I think that he. I mean, would COPE, in your view, arrive at the scene and not do anything unless directed by the police? I think that there was interaction with the police. Well, of course there's interaction. Yeah, and they're always. They call for him, right? I think in terms of that fact indicates that it was law enforcement that was making the determination to interject him with the sedative. All right. Thank you. Thank you, Mr. Barnett. Just three quick responses. With regard to the state statute, I encourage the court to look at the state statute that he was referencing. I don't have it in front of me, but I think it's a catch-all provision in terms of Health and Hospital Corporation and the powers that they have. I direct the court to Indiana Code Section 34-18-2-14, which provides that a paramedic is defined as a medical provider, which I think is the more pertinent statute to the two issues before this court on appeal. With regard to a, quote-unquote, chemical restraint, that's a medical term of art. Dr. Sozio testified to that. Nurse Cunningham was asked about that. She said that she had used Versed in the hospital setting approximately ten times. So chemical restraint is a medical term of art, not a law enforcement term of art. In fact, when one of the officers was asked about a chemical restraint, he thought he was being asked about pepper spray. So chemical restraint is ultimately what I think the district court got hung up on, but ultimately it's not a law enforcement term. I also encourage the court to look at the Rivas case, look closely at it. We've distinguished it in our brief. It's not applicable here. It would not have put paramedic Cope on notice that his administration of the sedative was a violation of the constitutional right. Thank you. Thanks to both counsel. The case is taken under advisement and court will proceed.